IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | : | |
|---|---|---|
| MICHELLE C. | : | |
| | : | |
| v. | : | NO. 24-CV-5556 |
| | : | |
| LELAND DUDEK, | : | |
| Acting Commissioner of Social Security | : | |
| | : | |

**O P I N I O N**

SCOTT W. REID                                                                              DATE:  March 24, 2025
UNITED STATES MAGISTRATE JUDGE

Michelle C. brought this action under 42 U.S.C. §405(g) to obtain review of the decision of the Commissioner of Social Security denying her claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). She has filed a Request for Review to which the Commissioner has responded. As explained below, I conclude that Michelle C.'s Request for Review should be denied, and judgment entered in favor of the Defendant.

I.      *Factual and Procedural Background*

Michelle C. was born on June 24, 1971. Record at 125. She completed two years of college. Record at 298. In the past, she worked as an administrative assistant and as a customer service representative at a call center. Record at 298-9. On April 26, 2022, she filed applications for DIB and SSI, alleging disability on the basis of herniated discs in the neck and lower back, chronic pain in the hip and knee, bipolar disorder, anxiety, post-traumatic stress disorder ("PTSD"), and a sleep disorder. Record at 125, 257, 297. Originally, she alleged a disabled date of April 25, 2021, but she later amended this date to June 23, 2021, the day before her 50th birthday. Record at 44, 125.

Michelle's C.'s applications for benefits were denied on September 13, 2022. Record at 138, 139. They were denied again on reconsideration on February 15, 2023. Record at 160, 161. Michelle C. then requested reconsideration *de novo* by an Administrative Law Judge ("ALJ"). Record at 211.

A hearing was held in this case on November 16, 2023. Record at 37. On December 4, 2023, however, the ALJ issued a written decision denying benefits. Record at 15. The Appeals Council denied Michelle C.'s request for review on August 22, 2024, permitting the ALJ's decision to serve as the final decision of the Commissioner of Social Security. Record at 1.

II.   *Legal Standards*

The role of this court on judicial review is to determine whether the Commissioner's decision is supported by substantial evidence. 42 U.S.C. §405(g); *Richardson v. Perales*, 402 U.S. 389 (1971); *Newhouse v. Heckler*, 753 F.2d 283, 285 (3d Cir. 1985). Substantial evidence is relevant evidence which a reasonable mind might deem adequate to support a decision. *Richardson v. Perales*, *supra*, at 401. A reviewing court must also ensure that the ALJ applied the proper legal standards. *Coria v. Heckler*, 750 F.2d 245 (3d Cir. 1984); *Palmisano v. Saul*, Civ. A. No. 20-1628605, 2021 WL 162805 at *3 (E.D. Pa. Apr. 27, 2021).

To prove disability, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him from engaging in any 'substantial gainful activity' for a statutory twelve-month period." 42 U.S.C. §423(d)(1). As explained in the following agency regulation, each case is evaluated by the Commissioner according to a five-step process:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration

requirement in §404.1590, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.

20 C.F.R. §404.1520(4) (references to other regulations omitted).

Before going from the third to the fourth step, the Commissioner will assess a claimant's residual functional capacity ("RFC") based on all the relevant medical and other evidence in the case record. *Id*. The RFC assessment reflects the most an individual can still do, despite any limitations. SSR 96-8p.

The final two steps of the sequential evaluation then follow:

(iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. (v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make the adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

*Id*.

III.   *The ALJ's Decision and the Claimant's Request for Review*

In her decision, the ALJ found that Michelle C. suffered from the severe impairments of cervical and lumbar degenerative disc disease, myofascial pain syndrome, patellofemoral chondromalacia of the bilateral knees, a major depressive disorder, and PTSD. Record at 17. She found, however, that no impairment, and no combination of impairments, met or medically equaled a listed impairment. Record at 18.

The ALJ determined that Michelle C. retained the RFC to engage in light work, with the following limitations:

> [S]he can [only] occasionally crawl, kneel, and climb ramps, stairs, ladders, ropes, and scaffolds. In addition, she can understand, remember, and carry out simple instructions but cannot perform work that requires a specific production rate (such as assembly line work) or work that requires hourly quotas. Finally, she can tolerate occasional interaction with coworkers and the public.

Record at 21.

Relying upon the testimony of a vocational expert who appeared at the hearing, the ALJ concluded that Michelle C. could not return to any of her prior relevant work. Record at 29-30. However, she could work in such jobs as office helper, price marker, and mail sorter. Record at 31. The ALJ decided, therefore, that Michelle C. was not disabled. *Id*.

In her Request for Review, Michelle C. argues that the ALJ erred in failing to evaluate the report prepared in 2016 by consulting mental health expert Ralph Mora, Ph.D., as part of an earlier application for benefits which was denied before this case was filed. She also argues that the ALJ's failure to consider Dr. Mora's opinion "tainted her consideration of the other opinion evidence" regarding her mental health. *Request for Review* at 8. Finally, Michelle C. argues that the ALJ did not properly consider her subjective testimony about her mental health issues.

IV.   *Discussion*

    A.   *Dr. Mora's Report*

Dr. Mora met with Michelle C. on May 20, 2016, almost six years before she filed the application for benefits at issue here, and just over five years before her alleged disabled date of June 23, 2021. According to Michelle C., the ALJ erred in failing to consider his findings, which included numerous moderate limitations. Record at 402-3.

>The ALJ, however, did not ignore Dr. Mora's report.  She wrote:
>
>The undersigned has not assessed the consultative examination report dated May 20, 2016, as it was completed almost five years prior to the period at issue in this decision and as such does not contain subjective symptom complaints, objective clinical findings, or opinions regarding the claimant's physical or mental condition or her related functioning at any time relevant to this decision and is therefore not relevant to this decision and is therefore not relevant.

Record at 27.

Despite Michelle C.'s arguments to the contrary, the ALJ's treatment of Dr. Mora's report was undoubtedly permissible.  The time period under consideration in this case in connection with Michelle C.'s application for DIB was only from June 23, 2021 – her alleged disabled date – to her last insured date, which was September 30, 2021.  Record at 15.  With respect to her claim for SSI, the relevant time period ran from the month after her application date through December 4, 2023, the date of the ALJ's decision.  *See Petruvich v. Commissioner of Social Security*, 2019 WL 5587323 at *1 (D.N.J. Oct. 30, 2019).  Dr. Mora's 2016 observations could not tell the ALJ anything about Michelle C.'s condition during these time periods.

Even if an unusual case could exist where six-year-old medical opinion evidence would be relevant to an ALJ's decision, Michelle C. has not shown any specific or unusual facts warranting it here.  Major depressive disorder and PTSD are not degenerative conditions, like osteoarthritis, that only get worse over time, so it cannot be assumed that Michelle C. had the same or greater limitations in the relevant period than those observed by Dr. Mora.  Therefore, I cannot conclude that the ALJ erred in declining to consider Dr. Mora's report.

Finally, it could be said that Dr. Mora's report is something of a red herring.  Dr. Mora found Michelle C. to be moderately limited in the ability to understand and carry out complex instructions, and to make judgments on complex work-related decisions, but he found she was

5

only mildly limited in the ability to understand and carry out simple instructions, or to make judgments on simple work-related decisions. Record at 402. He also indicated that she was moderately limited in the ability to interact appropriately with the public, supervisors, and co-workers, and to respond to usual work situations or changes in a routine work setting. Record at 403.

Thus, Dr. Mora's findings are not dissimilar to those made by the ALJ, who found Michelle C. to be moderately limited in understanding, remembering, or applying information; interacting with others; and concentrating, persisting, or maintaining pace, as well as mildly limited in managing herself. Record at 19-20. The ALJ accordingly limited Michelle C. to simple work with no production quotas, with limited interaction with coworkers and the public. Record at 21. Accordingly, there is no reason to think that the ALJ's decision would have been different if she had considered Dr. Mora's report.

      B.    *Mora's Report and the Other Opinion Evidence*

Michelle C. argues that the ALJ's failure to consider Dr. Mora's report "tainted" her consideration of the other opinion evidence in that she would have found the report of her treating mental health practitioner, Bradford Bobrin, M.D., consistent with the other evidence if she had compared it to Dr. Mora's report.

In a report dated August 22, 2022, Dr. Bobrin indicated that Michelle C. had "unlimited or very good" abilities in many areas, but abilities which were "seriously limited but not precluded" in many other areas. Record at 689. He also found her to be "unable to meet competitive standards" in the ability to maintain attention for two-hour segments, and in the ability to accept instructions and respond appropriately to criticism from supervisors. *Id*. The

ALJ found his report unpersuasive, calling it inconsistent with contemporaneous treatment records. Record at 28.

As above, there would be little to be gained from comparing Dr. Bobrin's impressions from 2022 with Dr. Mora's observations in 2016. Dr. Mora's report was written multiple years before the relevant time period.

In any event, Dr. Mora did not find Michelle C. to have any marked or extreme limitations. Record at 402-3. His report would not, therefore, have been consistent with Dr. Bobrin's finding that she was "unable to meet competitive standards" in some respects. Thus, there is no reason to think the ALJ would have found Dr. Bobrin's report more credible even if she had considered Dr. Mora's evidence.

    C.    *The ALJ's Treatment of the Subjective Evidence*

Michelle C. stated at her hearing:

> I have a lot of issues with memory, forgetfulness, a lack of focus. I deal with a lot of depression, fatigue, mood swings, panic, and anxiety episodes more than four times a week. I don't want to go outside. Being in an area around people is problematic for me. I become anxious, and anxiety attacks are ready to happen. Being around a lot of people or even with two people gives me anxiety. I don't want to leave the house … I don't want to be around people. I don't want to be seen.

Record at 61.

In her decision, the ALJ wrote:

> Regarding her mental health, the treatment records show that [Michelle C.] reported issues with depressed mood, anxiety, and deficits in memory and focus. The records also show that she reported significant improvement in these symptoms with medication and use of coping strategies with largely normal findings on mental status examinations including alert, calm, and cooperative presentation with euthymic mood, clear speech, linear and goal-oriented thought processes, no suicidal or homicidal thought, and good insight and judgment. (Exhibit B22F).

Record at 26. Michelle C. argues that this was a defective analysis of her subjective testimony because it selectively relies on "a single exhibit." Request for Review at 12.

In fact, "B22F" is not a single document but a 73-page compilation of Michelle C.'s treatment notes from Lower Merion Counseling. Michelle C. has not cited any other relevant exhibit to show the existence of contradictory evidence, except for one isolated treatment note, predating the Lower Merion Counseling notes.[1] Request for Review at 12. The other quotes she offers are from B22F itself. *Id*. Clearly, Michelle C. has not shown that the ALJ wrongly "relied on a single exhibit," since she herself is relying on the same exhibit.

Elsewhere in her Request for Review, Michelle C. writes that the ALJ's use of the Lower Merion Counseling notes was improperly selective. Request for Review at 14. However, review reveals that the ALJ's discussion of the notes was reasonably accurate, taking into consideration both positive and negative observations therein.

Some notes reflect the improvement and normal mental status which the ALJ described. On March 21, 2022, Dr. Bobrin wrote: "Says that overall she is doing ok, no new sx, no side effects, looking for work, addressed interpersonal issues." Record at 752. Similarly, on September 12, 2022, he wrote: "Michelle overall says that she is doing better she is taking reduced classes she is not having as much irritability in the class and is doing well she feels her mood is well and does not feel she needs any medication changes … Her mental status exam was normal she did not show any evidence of psychosis anxiety or mania or depression she was not suicidal homicidal." Record at 765. (Lack of punctuation in original). Also, on December 12, 2022: "mental status exam Michelle is euthymic and full normal mentation cognition normal thought process normal speech and language no suicidal homicidal thoughts insight and judgment is intact." Record at 763.

---

[1] The cited note, dated November 10, 2021, authored by Elkins Guzman, M.D., quotes Michelle C. as saying: "today is the first day I got out of bed in a while." Record at 478. However, it also describes her as a full-time college student with 80 credits towards a degree in psychology. *Id*.

A note from March 23, 2023, is also positive, although it reflects some anxiety:

> She reports that since starting the Adderall it has been very helpful for her. … This has allowed her to keep her focus throughout the day so that she can focus on her classes. … She has been journaling a lot and listening to music to help her mood. She noted, "I can't change my past, but I can change my reactions." Her mood has overall been stable, and she is not depressed. Her anxiety is managed by her medications. She is also continuing to sleep much better with the current medications we have prescribed at bedtime.

Record at 766. This note also reflects a benign mental status examination: "Alert, calm, cooperative. Euthymic. Clear speech. Linear and goal-oriented thought process. Denied AVH. Good insight and judgment. Denies suicidal and homicidal thoughts." Record at 767. A month later, Dr. Bobrin wrote: "She reports that she is sleeping better at night, but she is still having problems with the Adderall not keeping her focus consistent throughout the day. … Her mood is positive and stable. … Interested in career counseling." Record at 768.

On July 26, 2022, Dr. Bobrin wrote: "MSE mostly normal, no psychosis or mood instability, no SI, a little flattened and constricted and a tad bit melancholy." Record at 757. On September 12, 2022, he reported:

> Spoke to Michelle by phone. She says she is doing well. She is working and things are going well. She is sleeping well and her appetite is good she is not depressed or anxious she is not having any psychosis she denies being hopeless or helpless she denies having any suicidal or homicidal thoughts or any thoughts of wanting to be dead. … She wanted to know the maximum amount of time between visits I told her from 1-3 months with 3 months being the max and she wants to come back again in 3 months.

Record at 761.

This is not to say that the Lower Merion Counseling notes did not also reflect significant psychological symptoms. On May 9, 2022, for example, Dr. Bobrin wrote: "Spoke with Michelle by phone, we discussed her stressors in life, her sleeping issues and her depression issues and how she is depressed to the point that she can't get out of bed and recently felt like life

9

was not worth living." Record at 754. This is consistent with the ALJ's inclusion of significant non-exertional limitations in her RFC assessment. Record at 21.

However, the ALJ also emphasized that the Lower Merion Counseling notes show that Michelle C. was both participating in college classes and seeking work during the relevant period, both of which are inconsistent with her claims of disabling mental limitations. Record at 26 ("The mental health records show that she regularly reported participating in college courses … The notes also show that she reported looking for work").

When viewed as a whole, therefore, Exhibit B22F is consistent with the ALJ's conclusion that Michelle C.'s mental status "in conjunction with her ongoing level of regular activities and interactions" indicated that "while the claimant may continue to experience some ongoing symptoms related to her physical and mental impairments, those symptoms have not consistently risen to the level of severity required to justify additional limitations at any time relevant to this decision." Record at 26. I do not find merit to Michelle C.'s argument that the ALJ's discussion of this evidence was improperly selective.

V.   *Conclusion*

In accordance with the above discussion, I conclude that the Plaintiff's Request for Review should be DENIED, and judgment entered in favor of the Commissioner.

BY THE COURT:

/s/ Scott W. Reid

_____
SCOTT W. REID
UNITED STATES MAGISTRATE JUDGE